## ARKANSAS SOUTHERN RAILROAD COMPANY *v.* GERMAN NATIONAL BANK.

### IN ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 56. Argued November 14, 15, 1907.—Decided December 2, 1907.

Unless the decision upon a Federal question was necessary to the judgment of the state court, or in fact made the ground of it, the writ of error must be dismissed.

Even when an erroneous decision upon a Federal question is made a ground of the judgment of a state court, if the judgment is also supported upon another ground adequate in itself and containing no Federal question the writ of error must be dismissed.

This court, ordinarily, will not inquire whether the decision upon matter not subject to its revision was right or wrong.

Although the state court may refer to and uphold the statute, the constitutionality of which is attacked, if it does so after stating the rule at common

law and that the statute is merely declaratory thereof the judgment is based on the common law rule and no Federal question exists that this court can review.

Writ of error to review 92 S. W. Rep. 522, dismissed.

THE facts are stated in the opinion.

*Mr. Edward B. Peirce* for plaintiff in error:

In determining whether a Federal question was decided adversely to the plaintiff in error, this court will look only to the record itself; nothing out of the record certified to this court can be taken into consideration. This must be shown; first, either by express averment or by necessary intendment in the pleadings of the case. Or, secondly, by direction given by the court and stated in the exception. Or, thirdly, it must be entered on the record of the proceeding in the appellate court in cases where the record shows that such a point may have arisen and been decided, that it was in fact raised and decided; and this entry must appear to have been made by the order of the court and certified by the clerk as a part of the record in the state court. *Armstrong* v. *Treasurer of Athens County,* 16 Pet. 285.

In determining whether a Federal question was decided adversely to plaintiff in error, this court will act only upon the record of the court below; and of that record the petition for writ of error or the assignment of errors made in the state court forms no part. *Clark* v. *Pennsylvania* (1888), 128 U. S. 397; *California Powder Works* v. *Davis* (1893), 151 U. S. 389; *Sayward* v. *Denny* (1894), 158 U. S. 183; *Butler* v. *Gage* (1890), 138 U. S. 52; *Manning* v. *French* (1889), 133 U. S. 186.

The assignment of errors made in the state court cannot be looked to to determine whether a Federal question was decided. *Fowler* v. *Lamson* (1896), 164 U. S. 262.

While this court will not examine the evidence, yet for the purpose, not of deciding the facts, but of throwing light on the findings, it will examine the entire record, including the

opinion of the court below. *Egan* v. *Hart* (1896), 165 U. S. 188; *Eustis* v. *Bolles* (1893), 150 U. S. 361.

A careful examination of the record in the case at bar will show conclusively that the decision of the state court was based upon the Federal question and that no other question was decided.

If it sufficiently appears from the record itself that the repugnancy of a statute of a State to the Constitution of the United States was drawn in question, or that the question was applicable to the case, this court has jurisdiction of the cause, although the record should not in terms state that the repugnancy of the statute of the State to any part of the Constitution was drawn in question. *Satterlee* v. *Matthewson*, 2 Pet. 380, 410; *McCullough* v. *Virginia* (1898), 172 U. S. 119; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116, 143.

*Mr. John Fletcher*, with whom *Mr. W. C. Ratcliffe* was on the brief, for defendant in error:

It is settled that this court will not review a state judgment, although a Federal question was decided adversely to the plaintiff in error, if another question, not Federal, was also raised and decided against him, the decision of which is sufficient to sustain the judgment. It must appear that the judgment could not have been rendered without deciding the Federal question. *Harris* v. *Morton*, 171 U. S. 38; *Cook County* v. *Calumet*, 138 U. S. 635; *DeLaussure* v. *Garland*, 127 U. S. 216; *Murdock* v. *Memphis*, 20 Wall. 590; *Klinger* v. *Missouri*, 13 Wall. 257; *K. & P. R. Co.* v. *P. & K. R. R. Co.*, 14 Wall. 23; *Johnson* v. *Risk*, 137 U. S. 307; *Wood* v. *Skinner*, 139 U. S. 293; *Henderson Bridge Co.* v. *City of Henderson*, 141 U. S. 679; *Eustis* v. *Bolles*, 150 U. S. 361.

That the judgment of the court was based upon the finding that the cotton was delivered to the compress company for the account of Alphin & Lake Cotton Company and that this was the basic question underlying the judgment of the court is not only conclusively shown by the assignment of errors but

is clearly set forth in the petition for rehearing in the Supreme Court.

The determination of this question against the railroad company renders it unnecessary that the court should go into the question as to the validity of the statute of the State.

Indeed it may be said that the determination of any of the other non-Federal questions raised in the case and set out in the assignment of errors is sufficient to settle the case without considering the effect of the statute.

This court will not re-examine the evidence, and when the facts are found by the court below as in this case this court is concluded by such finding. *Egan* v. *Hart,* 165 U. S. 188; *Cornell University* v. *Fiske,* 136 U. S. 152.

Mr. Justice Holmes delivered the opinion of the court.

This is a suit brought by the defendant in error, hereafter called the plaintiff, for the failure of the railroad company, hereafter called the defendant, to deliver cotton in accordance with the terms of bills of lading issued by the railroad and held by the plaintiff as indorsee. The cotton in question was purchased by the Alphin & Lake Cotton Company, and shipped over the defendant's road to El Dorado, Arkansas, mainly from Bernice, Louisiana. The Bank of Bernice having made advances took the bills of lading as shipper and sent them with drafts on the purchaser to the Bank of Little Rock. The Bank of Little Rock wishing to reduce the account of the Alphin & Lake Cotton Company, these bills subsequently were transferred to the plaintiff as security for an advance. The bills of lading bore the words "Consigned to S|O. % Compress El Dorado, Ark. Notify Alphin & Lake Cotton Co." They also contained a notice that the liability of the railroad as a common carrier ended on the arrival of the cotton at the station of delivery, and that unless removed by the consignees within twenty-four hours the cotton might be removed and

stored by the railroad at owner's risk and expense in a warehouse of its choice.

The only place at which the cotton could be stored at El Dorado, and the place at which all the cotton coming over the railroad was delivered, was a compress company of which Lake, a member of the purchasing company, was president. The railroad on the arrival of this cotton followed its custom and handed the cotton over to the compress company. It is stated by the Supreme Court of Arkansas, whose decision we are asked to review, that the delivery was made at once, for account of Alphin & Lake Cotton Company, with no further directions and without mention of the restriction to shipper's order, on the supposition that it belonged to the Alphin & Lake Cotton Company. The bills of lading were outstanding and were not asked for as a condition of the bailment. In the defendant's answer it is admitted that the cotton was not delivered to the plaintiff, on demand some weeks later, and while it is alleged that the delivery to the compress company was made to it as agent for the holders of the bills of lading, it is alleged also that the Alphin & Lake Cotton Company was the owner of the cotton and thereafter took possession of it, sold it and received the proceeds.

The judge before whom the case was tried directed a verdict for the plaintiff, and on exceptions the Supreme Court of the State affirmed the judgment of the trial court. 92 S. W. Rep. 522.

The statutes of Arkansas enact that such bills of lading may be transferred by endorsement and delivery of the same, with the effect of conveying a valid title to or lien upon the produce for which they are given, and forbids the delivery of such produce except on surrender and cancellation of the bills of lading, with a proviso exempting documents having the words "not negotiable" on their face. A violation of the enactment is made criminal and severely punished, and it is provided that any person aggrieved may recover all damages sustained by reason of such violation. Kirby's Digest, §§ 530, 531. It is

argued that the case could not have been withdrawn from the jury, or the judgment upheld, except on the assumption that these sections of the statutes were valid, that they invalidated the stipulation in the bills of lading for a right to store and overrode the directions contained in them, and that the plaintiff made out a case on the undisputed fact that the cotton was delivered to the compress company without a surrender of the bills of lading. It is argued further that the sections, so far as they bear on these transactions, are repugnant to the Constitution, Art. I, § 8, as an unauthorized attempt to regulate commerce among the States, and this is the error relied upon here, although, by no means the only one assigned.

But according to the well-settled doctrine of this court with regard to cases coming from state courts, unless a decision upon a Federal question was necessary to the judgment or in fact was made the ground of it, the writ of error must be dismissed. And even when an erroneous decision upon a Federal question is made a ground, if the judgment also is supported upon another which is adequate by itself, and which contains no Federal question, the same result must follow as a general rule. Moreover, ordinarily this court will not inquire whether the decision upon the matter not subject to its revision was right or wrong. *Murdock* v. *Memphis*, 20 Wall. 590; *Hale* v. *Akers*, 132 U. S. 554; *Leathe* v. *Thomas, ante*, p. 93. Therefore if we should be of opinion, as we are, that the Supreme Court rested its judgment upon principles of common law as it understood them, we should go no farther, although that court also upheld and relied upon the statute, whether in our opinion its views were right or wrong.

It will have been noticed that under the answer there was only a very narrow issue of fact possible, although there was one. There was an issue as to whether the delivery to the compress company was not a delivery to it as agent for the holders of the bills of lading. If that was as the defendant alleged, it might be that the contract was fulfilled and the defendant discharged, unless the statute made a change. But on the evi-

dence there was hardly room for argument or doubt. There was no real question that the cotton was handed over at once and not in the exercise of the stipulated right after twenty four hours, that no directions about delivery were given to the compress company, and that the persons handling the cotton at El Dorado thought that it belonged to the Alphin & Lake Cotton Company or acted as if it did. Both sides asked the judge to direct a verdict and evidently regarded the questions as mainly questions of law. While it may be that the judge would not have felt technically justified in directing the jury to find for the plaintiff, but for his views on the effect of the statute, the Supreme Court seems to have thought the facts indisputable, and stated them categorically with no hint of hesitation or doubt.

Whether the Supreme Court was warranted in assuming the facts to be as it set them forth is no concern of ours. The important thing is that it was at pains to state them, and that it can have had no purpose in doing so other than to establish a liability under the contract at common law. If the statute imposed liability for delivery without a surrender of the bills of lading, whether the contract was performed or not, there was no need to go into these details. It is true that the court refers to and upholds the statute, but it does so after stating the duties and liabilities of the carrier at common law, and says more than once that the relevant enactment is for the enforcement of duties already existing; that is, it would seem, that it is only declaratory so far as this case is concerned. The court treats the contract itself as requiring a delivery to shipper's order, and only upon a production of the bills of lading properly indorsed. Its concluding words are, "under the contract as shown by the bills of lading it was relieved of liability on account of the storage, but not of the failure to deliver according to law." Whether the analysis of the contract was correct or not, and whether or not there were other grounds of common law upon which the defendant ought to have escaped, are matters upon which we cannot speculate. When we see

that the opinion of the court upon the constitutional question first appearing in that opinion was not necessary to its judgment upon the case we have nothing more to do.

*Writ of error dismissed.*