# TORRES *v.* LOTHROP, LUCE & COMPANY.

### APPEAL FROM AND IN ERROR TO THE SUPREME COURT OF PORTO RICO.

No. 17.   Argued October 31, 1913.—Decided December 1, 1913.

The due process clause of the Federal Constitution does not control mere forms of procedure provided only the fundamental requirements of notice and opportunity to defend are afforded. *Louisville & Nashville R. R. Co.* v. *Schmidt,* 177 U. S. 230.

Where the appellate court is without authority to consider errors of the trial court, which were not there assigned, this court cannot reverse the appellate court for error in not deciding matters which it had no authority to pass on.

Although proceeds of a crop received by a mortgagee of the land may by law be imputed to payment of interest on the mortgage and not to other advances, they may, under a special contract with the mortgagor and by his subsequent acquiescence, be applied to payment of advances instead of interest.

In the absence of clear conviction of error, this court follows the conclusions of the court below in applying the local law.

One who has transferred his mortgaged premises by deed recorded prior to the foreclosure suit cannot set the foreclosure aside on the ground

that the court excluded testimony offered to show that the transfer was fictitious and that he was still the owner and entitled to notice. 16 Porto Rico 172, affirmed.

THE facts, which involve the validity of a sale of real estate in Porto Rico made in judicial proceedings for the foreclosure of a mortgage, are stated in the opinion.

*Mr. C. M. Boerman* for appellant and plaintiff in error:

This court has jurisdiction on this appeal, as the property claimed and involved is far exceeding the value of $5,000. *Royal Ins. Co.* v. *Martin,* 192 U. S. 149.

The summary proceedings under the mortgage law of Porto Rico are contrary to the provisions of the Constitution of the United States.

There is really no defense to the proceedings on a mortgage under this law. The mortgagor cannot have his day in court. The court virtually does not act as a court, but simply as an executive officer would act. It deprives a man of his property without due process of law.

The general guarantees of life, liberty and property contained in the Constitution of the United States apply to Porto Rico. *Downes* v. *Bidwell,* 182 U. S. 277.

All the laws in force in Porto Rico are so only through the act of Congress which declared them so to be after the change of sovereignty. Article 8, Organic Act of April 12, 1900.

For definitions given by this court to the words "due process of law" see *Hovey* v. *Elliot,* 167 U. S. 409; *Simon* v. *Craft,* 182 U. S. 427. See also *Health Department* v. *Trinity Church,* 17 N. Y. 510, 512; *Stuart* v. *Palmer,* 74 N. Y. 183, 189; *Ieck* v. *Anderson,* 57 California, 251, 253.

The rule of justice which forbids the taking of property except according to the law of the land, means that there shall be no taking, no condemnation, before hearing. *First Nat. Bank* v. *Swan,* 3 Wyoming, 356. See also

*People* v. *Essex County Supr's,* 70 N. Y. 228, 234; *Wright* v. *Cradlebaught,* 3 Nevada, 341, 349; *State* v. *Cutshall,* 110 N. Car. 538; *Lumbering Co.* v. *Wasco County,* 35 Oregon, 498; *Simmons* v. *West. Un. Tel. Co.,* 63 S. Car. 525; *Bennet* v. *Davis,* 90 Maine, 102; *Babcock* v. *City of Buffalo,* Sheld. 317, 340.

Judicial orders or judgments affecting the life or property of citizens in the absence of notice and opportunity to be heard to the party affected, are violative of the fundamental principles of our laws, and cannot be sustained. *In re Rosser,* 101 Fed. Rep. 562, 567; *Holden* v. *Harvey,* 167 U. S. 366; *Jensen* v. *Union Pac. Ry. Co.,* 6 Utah, 253; *In re Jensen,* 59 N. Y. 653, 655; *San Mateo* v. *So. Pac. Ry. Co.,* 13 Fed. Rep. 722, 752.

The provisions of the mortgage law itself were not complied with in the proceedings to foreclose the mortgage and therefore those proceedings are null and void.

*Mr. Malcolm Donald* for appellees and defendants in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The plaintiff in error, Marcelino Torres Zayas, in January, 1908, brought this suit to set aside a sale of real estate, made in judicial proceedings, of a summary or executory character, for the foreclosure of a mortgage and to recover the property with fruits, revenues and damages. The right to the relief sought was based, broadly speaking, upon the following grounds: *a,* the prematurity of the suit to foreclose because there was nothing due when the proceedings were commenced; *b,* the absence of a necessary party; *c,* vices in the proceedings, of such a character as to cause them to be absolutely void. The trial court dismissed the suit. On appeal, the Supreme Court of Porto Rico

affirmed and it is to reverse such judgment that the writ of error and the appeal in this record were prosecuted. Having the power to review only by appeal, (*Garzot* v. *de Rubio,* 209 U. S. 283) the writ of error is dismissed and we consider the case on the appeal.

The court below directed attention to the slovenly and ill arranged record, but despite its admonition nothing seems to have been done to re-arrange the record for the purposes of review by this court. We are not authorized to reëxamine the evidence, but a statement of facts made by the court below, and in a case where there was no such statement our duty would be to affirm because it would be impossible to decide that error had been committed. There is a statement of facts in the record, but it is unsatisfactory in many respects since in matters which are important it is silent where it should speak and in negligible matters speaks with unnecessary prolixity, being confusedly arranged and in important particulars but states evidentiary facts without any attempt to find the ultimate fact properly to be deduced from the stated evidence. We mention these subjects in order to direct the attention of the court below to them and to avoid the making of like statements of fact in the future. As the court delivered a full opinion which throws light on the statement and as in substance our conclusion will be rested upon documents which are uncontroverted and facts which are clearly found by the court below and are undisputed, we come to dispose of the case, giving, as a prelude, a statement which we deem necessary to an understanding of the matters for decision.

Torres owed a debt of $47,000 to W. S. H. Lothrop which Torres had assumed in 1898 on the purchase of certain real estate upon which the debt was secured by a conventional mortgage. The firm of De Ford & Company had acquired this debt from Lothrop, and in February, 1901, gave Torres an extension of four years to

February, 1905, new notes being furnished as evidence of the debt bearing ten per cent. interest payable annually and the notes being secured by a conventional mortgage on two pieces of property belonging to Torres and upon a third piece belonging to a commercial firm who intervened in the act and mortgaged its property to secure the debt of Torres. By the ninth clause of the act of mortgage it was agreed that the crops made by Torres on the property mortgaged by him, should be shipped to De Ford & Company who should sell them, applying the proceeds first· to the interest and then to the principal of the debt. The mortgage, while indivisible as between the parties, was as to third persons made divisible, a specific portion of the debt being assigned to each ·of the three properties. The original mortgage due by Torres was cancelled and erased on the execution of the new one. The crops were shipped to De Ford & Company in 1902 and 1903, and were sufficient to pay the interest. In the crop year 1904, Torres solicited advances from De Ford and Company to enable him to make his crop, and acceding to his request the firm either directly advanced or paid off advances made by others, charging the same to Torres. When the crops came in and were sold, their proceeds were inadequate to pay these advances and the interest. They were imputed primarily to the advances leaving the interest unpaid, this being done with the assent of Torres, who had monthly accounts rendered him and made no objection whatever to the debiting of advances or the imputation of payment. The interest for 1904 remained unpaid and a suit to foreclose the mortgage was commenced by a summary, or executory process in accordance with the local mortgage law. There was filed with this suit a certificate reciting that the mortgaged property stood upon the public records in the name of Torres, this certificate having been issued by the registering office a day or two before the commencement of the suit. On the day the foreclosure suit was filed,

whether before or after does not appear, Torres sold the property to Alvarado for a small sum in cash and a large amount secured by mortgage and this deed of sale was put upon the registry before any cautionary notice of the suit was, or could have been recorded. Conformably to law, the court ordered a demand made upon Torres notifying him of the suit and calling upon him to pay the debt within thirty days, in default of which, the property would be sold. Although he was served with this notice, Torres ostensibly took no heed of the proceedings, but Alvarado as the registered owner of the property filed a petition to enjoin the foreclosure proceedings on grounds which, although they are not fully set out in the record, it is conceded were substantially identical with those here relied upon. No injunction was granted and the suit having been twice called for hearing, was dismissed for want of prosecution. An order for the seizure of the property was in due season awarded by the court, as was also another order stating the amount of the debt and directing the sale of the property. It was seized, advertised and sold by the marshal and bought in by one Rosaly, who assumed the mortgage sued upon in the foreclosure proceedings and paid a small cash price. It then developed that the deed to Alvarado which was on the records was an insurmountable obstacle to the completion of the purchase made by Rosaly under the foreclosure and in those proceedings he began what was tantamount to an hypothecary action against Alvarado as a third possessor to compel him to pay the mortgage debt or cancel the inscription of his deed of purchase. Alvarado appeared in these proceedings, admitted that he could not pay the mortgage debt and could not hold the property unless he did, that he had brought his suit to enjoin and had intentionally abandoned the same and consented to the erasure of the inscription of his deed of sale. This being done, the marshal made a deed to Rosaly in confirmation of the

foreclosure sale, which was duly inscribed.  Subsequently, Rosaly having given a mortgage in favor of the firm of De Ford, Luce & Company who were the successors in right of De Ford & Company, by legal proceedings obtained an erasure of the inscription of the Torres mortgage which he, Rosaly; had assumed at the foreclosure sale on the ground that the same had been discharged.

A little more than a year after, that is, on the twentieth of April, 1907, Torres and Alvarado, in a notarial act, rescinded the sale which had apparently taken place between them, it being recited in the act that the rescission was the result of an agreement which had taken place between the parties in 1905 and that it was caused by the refusal of the wife of Alvarado to join in the mortgage which was given by him in the deed of sale.

Eight months afterwards, as we have seen, in January, 1908, Torres commenced this suit upon the general grounds which we have at the outset outlined.  The assignments of error which are relied upon to reverse the judgment, affirming the action of the trial court, in dismissing the suit, are nineteen in number.  While we think their inherent weakness is apparent from the facts which we have just stated, we briefly notice them.

1st.  The summary or executory process provided by the mortgage law, which was followed in foreclosing the Torres mortgage, it is insisted was so deficient in notice or so wanting in opportunity to defend as to cause that law to be repugnant to the due process clause of the Constitution of the United States.  Without pausing to apply the elementary doctrine that the due process clause does not control the mere forms of procedure provided only the fundamental requirements of notice and opportunity to defend are afforded (*Louisville & Nashville Railroad Co. v. Schmidt,* 177 U. S. 230), and without stopping to indicate how clearly these fundamental rights were provided for as demonstrated by the facts which we have enumerated, we

think it suffices to say that it does not appear that the contention of want of due process was urged either upon the trial court, or was assigned as error in the court below, or was passed upon by that court. And as in its opinion in this case concerning another subject the court below pointed out that it was without authority to consider errors complained of which were not presented to the trial court, it follows that in any view, it could not be held that the court below erred in deciding a matter which it did not decide and which it had no authority to pass upon.

2nd. It is contended that the ninth clause of the act of mortgage of 1901 was mandatory and prohibited the firm of De Ford & Company from advancing to Torres, at his request, money to make his crop for the year 1904, and therefore such advances were not properly chargeable against the proceeds of the crop and hence the interest was paid because the whole proceeds of the crop, if so imputed, disregarding the advances, would have been adequate to have paid the interest. But we think the court below was right in refusing to sustain this fictitious payment of interest or to uphold the construction of the contract upon which it was based. We concur with the court below that the contract did not exclude the right of the firm to advance to Torres at his request, sums to aid him in making a crop and thus to enable him to carry out instead of disregarding the letter and the spirit of the contract. This view, of course, disposes of the contention that error was committed in admitting proof of the agreement to make the advances and of their receipt by Torres and his acquiescence in and approval of the accounts which were rendered him on the subject.

3rd. It is urged, although Torres was fully informed of the institution of the foreclosure proceedings by the demand made upon him under the order of court, conformably to the mortgage law, and had the opportunity to defend afforded by that law, nevertheless the proceedings

were void because no copy of the petition of foreclosure and citation, as provided by the Code of Civil Procedure in ordinary cases, was issued and served.   The contention is based upon the proposition that the Code of Procedure in force at the time the suit to foreclose was brought to the extent that it directed service of citation and summons in ordinary cases was cumulative and applicable to proceedings under the mortgage law, because not incompatible with such law.   But construing and applying the local law the court below held that this contention was without merit, a conclusion which we follow in the absence of a clear conviction that error was committed, which is far from being the case, and because in any event, for reasons which we shall hereafter state, the contention was additionally without merit.

4th: We group under this paragraph all the other errors relied upon, specifying only those which we consider of importance: *a*, That the wife of Torres as a widow in community was not made a party defendant in the foreclosure suit; *b*, that the notes secured by the mortgage were not annexed to the petition to foreclose or filed therewith; *c*, that the order of the court directing the notice of demand was signed only by two out of the three judges composing the court, and by an attorney at law who was then acting as judge because of the recusation of a member of the court; *d*, because the act of mortgage did not contain a specification of value or appraisement for the purposes of foreclosure; *e*, because of an asserted defect in the advertisement which preceded the sale; *f*, because of the absence from the foreclosure record of the order finding the amount due and directing its payment.   The court disposed of all these objections separately upon considerations of local law which we see no reason to reverse, but which we do not refer to in detail, because, in addition it held them all untenable upon a general and we think, conclusive ground to which we refer.

It is not challenged, as pointed out by the court, that under the law of Porto Rico the state of the public record as to title is the dominant factor controlling proceedings for the foreclosure of a mortgage and therefore that the one in whose name a property stands, recorded upon the public records, is the essential party to a proceeding to foreclose. Nothing could better illustrate the correctness of these propositions than do the proceedings in this case, since in consequence of the existence of the registry of the title in Alvarado, resulting from the sale made to him by Torres, the foreclosure proceedings against Torres and the judicial sale thereunder were inefficacious to transmute the title and it became essential for Rosaly, the purchaser at such sale, to commence proceedings to enforce the mortgage as against Alvarado as a third possessor. Applying these principles the court held, in view of the existence of the record title in Alvarado, of his suit to restrain the foreclosure proceeding and its dismissal for want of prosecution, of the steps taken against him as a third possessor and his admissions on the subject and consent to the erasure of the inscription of his title, that the foreclosure proceedings were binding and it was not open to Torres who so far as the record was concerned had parted with his title, to assail them on the grounds which we have stated. The correctness of the premise and of the conclusion itself abstractly considered is not denied, but it is insisted that they are here inapplicable because the sale made by Torres to Alvarado was a mere fiction or simulation and one of the matters complained of which we have not specified is that error was committed in refusing to permit proof of the simulation.

The court below, however, considered and disposed of the alleged distinction in so conclusive and succinct a manner that we adopt and place our own conclusion upon it:

"Alvarado was the record owner and the ostensible

owner.  He not only had a duly recorded public document in his favor, but he had begun a suit similar to the present one and this course of action was inconsistent with the possession by anyone else.

"The appellant complains that the court erred in not permitting him to show that the conveyance made from Torres Zayas to Alvarado was fictitious or simulated and that the real party in interest was always Torres Zayas. We cannot see that the court committed an error in refusing to admit such testimony; at most Alvarado would have to be considered as the agent or representative of Torres Zayas and the maxim *qui facit per alium facit per se* may be held to apply.  The registry system in Porto Rico exists to apprise purchasers and others who are the true owners of property, and if a man after treating with the apparent owner, may still have his title impugned by a secret agreement existing between such record owner and the alleged true owner there would be no security in the acquisition of property."

*Affirmed.*