## OWENS v. BATTENFIELD et al.*

Circuit Court of Appeals, Eighth Circuit.
June 4, 1929.

No. 8083.

Joseph W. Bailey and Joseph W. Bailey, Jr., both of Dallas, Tex., for appellant.

H. B. Martin, of Tulsa, Okl., for appellee Riverside Oil & Refining Co.

J. B. Dudley, of Oklahoma City, Okl. (J. D. Lydick, of Oklahoma City, Okl., on the brief), for other appellees.

Before STONE, Circuit Judge, and FARIS and SYMES, District Judges.

STONE, Circuit Judge. This case is related to Riverside Oil & Refining Co. v. Dud-

*Rehearing denied September 23, 1929.

ley (No. 8059) 33 F.(2d) 749, this day decided.

A suit by minority stockholders of the above company was brought in the proper state court against the company, O. O. Owens and others. It resulted in a decree appointing a receiver for the company and determining that Owens owed the company something more than $90,000 on two claims of the company against him. After the above decree had been affirmed by the state Supreme Court, the company and Owens brought separate suits to restrain enforcement thereof. The suit of the company was brought in the Western District of Oklahoma and was aimed at those portions of the decree providing for receivership. This suit by Owens was in the Eastern District of Oklahoma and is aimed at those provisions in the decree determining the personal liability of Owens to the company. A decree dismissing this amended bill was entered upon a motion to dismiss which challenged the sufficiency of the bill and upon an election to stand upon the amended bill. While nominally an appellee, the company has filed a brief and counsel therefor has orally argued for reversal of the decree below.

The matter for decision here is whether the amended bill states a cause of action. The amended bill alleges the filing of the case in the state court and judgment (or decree) therein against Owens for $93,324.84 and $2,500; taking and perfecting of an appeal therefrom to the Supreme Court of the state; inclusion in the transcript on that appeal, of all evidence and proceedings in the trial court; briefing, argument and submission of that appeal, in May, 1923; a decision reversing the recovery of $93,324.84 against Owens (this opinion in full is Exhibit A to the amended bill); the filing and sustaining of a motion for rehearing—resulting in a second opinion (Exhibit B to the amended bill) wherein the decree of the trial court was affirmed as to both of the above amounts; this second opinion was announced by Mr. Justice Clark and concurred in by Chief Justice Nicholson and Justices Lester, Riley and Mason; filing thereafter and denial of a motion for rehearing filed by Owens. It is alleged further as follows:

"VII. Your petitioner avers that when Chief Justice Nicholson and Justices Mason, Lester and Riley purportedly concurred in the opinion and decision mentioned in the next preceding paragraph (and their concurrence was necessary to make it the decision and opinion of the court), neither of them had ever read a word of the testimony as set out in the case-made, or as contained in the briefs, and knew absolutely nothing about the law or the facts which should have determined the decision of that case, and were therefore unable to concur in any judgment in the case, and their purported concurrence, as shown by the record, is a fraud on your petitioner. Your petitioner learned the facts stated in this paragraph after the time within which a motion for a rehearing could, as a matter of right, be filed in the Supreme Court of the state of Oklahoma, and after the mandate in the case had issued on March 8, 1926; nor could he, by due diligence, have learned them before that time.

"VIII. Your petitioner avers that in said cause the main assignment of error, and the assignment upon which the purported decision was rendered was that there were no facts in evidence as shown by the voluminous case-made or record to support or justify the judgment as rendered in the court below. The case was orally argued on three separate occasions, the first time on May 22, 1923, before the following Justices: Chief Justice Johnson, and Justices Kane, Harrison, Kennamer, Mason and Cochran; three other justices being absent. Thereafter the Harrison judgment and opinion was rendered. The case was orally argued the second time on motion for rehearing on November 12, 1924, before Chief Justice McNeill and Associate Justices Johnson, Nicholson, Branson, Mason, Warren, Gordon and Lydick; the other Justice, Harrison, being absent. The case was orally argued the third time on February 10, 1925, before the court, five of the members of which had recently taken the oath of office. The justices who heard the third oral argument were Chief Justice Nicholson and Associate Justices Harrison, Branson, Mason, Hunt, Clark, Riley, Phelps and Lester. All the oral arguments which took place before the court as set out hereinabove developed a continuous and total disagreement as to what the evidence as reflected by the voluminous case-made or record in the case disclosed. The briefs as filed by the parties developed the same absolute and total disagreement of the parties as to the facts developed in the court below and reflected by the voluminous case-made or by record; under such circumstances no appellate court could possibly decide what the evidence in such case showed or what judgment it might support unless and until the evidence as set out in the voluminous case-made or record was read and carefully considered. * * *

"XI. Your petitioner further avers that

the law of Oklahoma requires the 'concurrence' of five out of the nine justices of the Supreme Court of the state of Oklahoma in order to enable said court to render a decision in any cause pending before it; that the well-settled law of this and all other jurisdictions of the United States requires, before decisions may be entered in causes pending before the Supreme Court or any other court which is composed of more than one judge or justice, that said cause shall receive the deliberation and the consideration which a hearing and the arguments of counsel are granted to assist and to aid, and that when the Supreme Court of the state of Oklahoma entered the decision complained of, on the 7th day of July, 1925, and when it overruled the motion for rehearing filed by your petitioner, at both of said times in said. cause none of said justices so concurring, or at least not all five of the justices so concurring, had so familiarized themselves with the facts in said case as to enable them to concur in any opinion or decision rendered by said court; that such failure to give said case the consideration and deliberation provided for by the laws of Oklahoma, and by the well-settled rules of judicial procedure in this and all other states, deprived your petitioner of his property rights without due process of law, and that said action is accordingly in violation and in contravention of the Fourteenth Amendment to the Constitution of the United States of America, and as such the action taken in accordance therewith is void and of no effect.

"XII. Your petitioner further avers that in accordance with the allegations of fact hereinbefore made, the judgment complained of was a judgment of but one member, if any, of the Supreme Court of the state of Oklahoma; that according to the constitution of said state, and the statutes passed in pursuance thereof, your petitioner, and all other litigants similarly situated, was entitled to have his case passed upon by a majority of said court; that in fact said court had no jurisdiction to render any kind or character of judgment in said cause unless five members of that court concurred in such judgment and opinion; that such concurrence as was required by law was absent in the instant case; and, therefore, the Supreme Court of the state of Oklahoma was without jurisdiction to enter the judgment complained of, and denied to your petitioner the same or equal protection which all litigants in said court are entitled to receive.

"XIII. Your petitioner avers that the judgment and decree purportedly affirmed by said Supreme Court was and is made up as follows:

"(a) The sum of $2,500 on account of an alleged profit in that amount adjudged to have been made by petitioner out of the so-called Magee contract; and

"(b) The sum of $93,324.84 on account of alleged expenditures in that amount of the funds of Riverside Oil & Refining Company, adjudged to have been made in connection with the so-called Jackson Scott or Kelleyville lease.

"And in addition to the matters and things hereinbefore in this bill of complaint set forth, your petitioner avers that the aforesaid action of the members of said Supreme Court, and said purported opinion, decision, and judgment of affirmance, was arbitrary, capricious, and unjust, in that there was absolutely no evidence in the record in said cause to sustain the said purported decision rendered on the 7th day of July, 1925; but that, on the contrary, the undisputed evidence shows without contradiction and beyond all controversy, that no such judgment could justly have been entered against your petitioner, for the reason that: [Then was set forth a brief statement as to the effect of the evidence in that transcript followed by:]

"Your petitioner shows that said judgment is wholly, exclusively, and entirely unsupported by the record and is, in like manner, contrary to the record, and, in like manner, unsupported by and contrary to the facts. In this connection your petitioner avers that all of the foregoing is fully, completely, and definitely shown by the case-made or record, in said cause, so filed and lodged in said Supreme Court of Oklahoma; that said case-made or record consists of approximately 3,000 pages, and is too voluminous and cumbersome to attach hereto as an exhibit, but your petitioner tenders herewith as a part hereof a full, true, correct, exact, and complete copy of the case-made or record in said cause, and with the permission of the court so to do will file and exhibit the same herein separately. Your petitioner avers that an inquiry into and investigation and consideration of the facts as reflected by said record in said cause would have revealed to said justices, the members of said court, that there was absolutely no evidence in said cause to sustain the decision of said court rendered on July 7, 1925, and that, on the contrary, no such judgment could have justly been rendered or entered against your petitioner; and in addition to, but in connection with, all the foregoing matters, your pe-

titioner further avers that the aforesaid action of the members of said Supreme Court, and said purported decision and judgment of affirmance, was arbitrary, capricious, and unjust, in that said decision was purportedly concurred in by the four justices before named without inquiry into or investigation or consideration of the law or the facts in said cause, and for these reasons, if execution were permitted to issue on said judgment, and the property of your petitioner were levied upon and sold in satisfaction thereof, such sale would constitute a taking of the property of your petitioner without due process of law and without according to him the equal protection of the law, and in contravention of the Fourteenth Amendment to the Constitution of the United States of America."

The main prayer was for temporary and permanent injunction against "in any manner collecting or attempting to collect all or any part of the judgment complained of."

Succinctly stated, the situation presented by the amended bill is that the rights of appellant have been tried out before regularly constituted state trial and appellate courts, both of which had unchallenged jurisdiction of the subject matter and of the person of appellant; that he appeared in each court and was fully heard therein; that the only dereliction complained of is that four of the five judges (who heard the argument and made final decision) in the appellate court did not read the evidence in the record and that such examination would have resulted in showing them that there was no evidence in the record to sustain the recoveries against Owens decreed by the trial court.

This action is a collateral attack upon a decree of the trial court. The sole purpose is to enjoin enforcement of that decree. The stated basis for such relief is that there was no evidence to sustain the decree—the evidence being to the contrary—and that the four judges of the Supreme Court who concurred in the affirmance of that decree had not examined the evidence and could not know what it was and such an examination would have shown no basis therein for the decree. An affirmance under such circumstances is charged to be in violation of the "due process" and the "equal protection" clauses of the Fourteenth Amendment.

Most broadly expressed, the purpose of the Fourteenth Amendment is to protect the property and personal rights of the individual from certain character of violations, expressed therein by a state. Two of those requirements are that such rights should not be invaded except by "due process of law" and that "equal protection of the laws" should be accorded.

While counsel for the company argues denial of equal protection of the laws, there is really no basis for such position in the allegations of the amended petition. Equal protection of the laws simply "requires laws of like application to all similarly situated" (Barrett v. Indiana, 229 U. S. 26, 29, 33 S. Ct. 692, 693 (57 L. Ed. 1050). Also see Truax v. Corrigan, 257 U. S. 312, 333, 334, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Missouri, Kansas & Texas Ry. Co. v. May, 194 U. S. 267, 269, 24 S. Ct. 638, 48 L. Ed. 971; Minneapolis & St. L. Ry. Co. v. Beckwith, 129 U. S. 26, 28, 29, 9 S. Ct. 207, 32 L. Ed. 585; Missouri v. Lewis, 101 U. S. 22, 30, 31, 25 L. Ed. 989. The act here alleged to be vicious is the failure of the four concurring judges to read the evidence in the record. There is no allegation that such conduct was peculiar to this litigation nor such treatment accorded these litigants in any wise different from that accorded other litigants. No allegation of discrimination is present. Therefore, no issue of inequality of protection can arise.

If the rights of appellant have been invaded in violation of the Fourteenth Amendment it is because he has been denied "due process of law."

The amendment is not limited as to the form in which or the agency by which the state may act in denying this "due process." Any such action by the state—whether by an executive, legislative or judicial agency—comes within the protection of the amendment (Scott v. McNeal, 154 U. S. 34, 45, 14 S. Ct. 1108, 38 L. Ed. 896) and "the judicial act of the highest court of the state, in authoritatively construing and enforcing its laws, is the act of the state" (Twining v. New Jersey, 211 U. S. 78, 90, 29 S. Ct. 14, 16, 53 L. Ed. 97).

Definitions of "due process of law" (as intended by the amendment), such as "the general rules which govern society" (Truax v. Corrigan, 257 U. S. 312, 332, 42 S. Ct. 124, 129 (66 L. Ed. 254, 27 A. L. R. 375), "the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as 'law of the land' " (Hebert v. Louisiana, 272 U. S. 312, 316, 47 S. Ct. 103, 104 [71 L. Ed. 270, 48 A. L. R. 1102]), or "law of the land" (Mo. Pac. R. Co. v. Humes, 115 U. S. 512, 519, 6 S. Ct. 110, 29 L. Ed. 463), are as general as the

term "due process of law" itself and are only slightly helpful in applying it to any particular case. The courts have wisely resorted to a process of judicial inclusion and exclusion, as the cases presented for determination required, with the reasoning for such decision. Davidson v. New Orleans, 96 U. S. 97, 104, 24 L. Ed. 616; Mo. Pac. Ry. Co. v. Humes, 115 U. S. 512, 519, 6 S. Ct. 110, 29 L. Ed. 463; Twining v. New Jersey, 211 U. S. 78, 100, 29 S. Ct. 14, 53 L. Ed. 97. Adopting this method we turn to the adjudicated cases which seem most nearly to approach the precise situation presented in the instant case to ascertain what light may be thrown by them upon the path our decision should follow.

■ Neither counsel nor we have been able to find any case very closely like this one. There are cases which give some aid. The "law of the land" includes those principles of procedure and of equity which have become established. It is established law that a judgment or decree cannot be collaterally attacked merely because it is erroneous. This has become an "axiom of the law." Cooper v. Reynolds, 10 Wall. 308, 316, 19 L. Ed. 931 and see Adams v. Preston, 22 How. 473, 488, 16 L. Ed. 273; Ludlow v. Ramsey, 11 Wall. 581, 587, 20 L. Ed. 216; Maxwell v. Stewart, 22 Wall. 77, 79, 22 L. Ed. 564; Iowa Central Ry. Co. v. Iowa, 160 U. S. 389, 393, 394, 16 S. Ct. 344, 40 L. Ed. 467; Central Land Co. v. Laidley, 159 U. S. 103, 112, 16 S. Ct. 80, 40 L. Ed. 91; Fauntleroy v. Lum, 210 U. S. 230, 28 S. Ct. 641, 52 L. Ed. 1039; Bonner v. Gorman, 213 U. S. 86, 91, 29 S. Ct. 483, 53 L. Ed. 709; American Exp. Co. v. Mullins, 212 U. S. 311, 314, 29 S. Ct. 381, 53 L. Ed. 525, 15 Ann. Cas. 536; Tisi v. Tod, 264 U. S. 131, 133, 44 S. Ct. 260, 68 L. Ed. 590; American Ry. Exp. Co. v. Kentucky, 273 U. S. 269, 273, 47 S. Ct. 353, 71 L. Ed. 639. Some of the above citations are not of collateral attack but are constructions of "due process of law" (as used in the Fourteenth Amendment) in writs of error from state courts. Obviously, this latter class of cases is as strong in situation as those involving collateral attack. This principle has been applied where the sufficiency of the evidence was, as here, in question (Wagner Electric Mfg. Co. v. Lyndon, 262 U. S. 226, 43 S. Ct. 589, 67 L. Ed. 961); the court saying (page 232 [43 S. Ct. 591]): "This would be to make such an attack [collateral attack on judgment] serve the purpose of a writ of error."

■ Also this alleged dereliction occurred in the course of procedure in the state courts. As to such, "the fundamental requisite of due process of law is the opportunity to be heard" (Grannis v. Ordean, 234 U. S. 385, 394, 34 S. Ct. 779, 783, 58 L. Ed. 1363), and there is the "elementary doctrine that the due process clause does not control the mere forms of procedure provided only the fundamental requirements of notice and opportunity to defend are afforded" (Zayas v. Lothrop, Luce & Co., 231 U. S. 171, 177, 34 S. Ct. 108, 110, 58 L. Ed. 172).

The adjudicated situation nearest the one before us is in Wagner Electric Mfg. Co. v. Lyndon, 262 U. S. 226, 43 S. Ct. 589, 67 L. Ed. 961, where three out of four state appellate judges heard the oral arguments on appeal and the opinion was written by the fourth judge on the printed arguments. This was termed "at most an irregularity, which does not in the slightest degree affect the validity of the judgment" (page 232 of 262 U. S. [43 S. Ct. 591]).

■ The rule is clearly stated by Mr. Justice McReynolds in American Ry. Exp. Co. v. Kentucky, 273 U. S. 269, 273, 47 S. Ct. 353, 355 (71 L. Ed. 639), where he says: "We cannot interfere unless the judgment amounts to mere arbitrary or capricious exercise of power or is in clear conflict with those fundamental 'principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights.' "

■ With this rule and the above cited applications of "due process" in mind, we turn to the case as stated in this bill of complaint. It may be that the decision of the state court was erroneous (as alleged) and that we would have reached a different conclusion, but that is no violation of any federal constitutional right. Much less can such error be corrected or its effect avoided by a collateral attack upon that judgment. Nor can we see that the concurrence of judges who had not read the evidence is, under the circumstances shown in the bill, a "mere arbitrary or capricious exercise of power" or is "in clear conflict with those fundamental 'principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights.' " It is true that the bill alleges that there was a sharp conflict as to what the evidence showed and that "under such circumstances no appellate court could possibly decide what the evidence in such case showed or what judgment it might support unless and until the evidence as set out in the voluminous case-made or record was read and

758

carefully considered." However, the bill states, also, that the case was briefed and was orally argued three times before the judges of the state Supreme Court. Also, that one of the concurring judges, Charles W. Mason, had heard all three oral arguments; that another concurring judge, George M. Nicholson, had heard the second and third arguments, while the two other concurring judges had heard the last argument. Also, that the second and third arguments were upon a motion for rehearing after one opinion had been written by the court, as first constituted.

It may well be that a painstaking examination of all of the evidence by each of the judges joining in the last opinion would have given greater assurance of a correct result. However, the allegation that such procedure was the only way by which such judge could fairly make up his mind is to nullify the effect of the oral presentations which the bill alleges to have taken place. It is very clear that this was a bitterly fought litigation and it is fair to assume that the case was well presented orally. The value of such oral presentation must be conceded—else there would be no necessity for argument of cases. Courts and counsel alike recognize the importance—often controlling effect—of oral argument. It is not for a federal court to say that after five state judges have heard full and exhaustive oral argument (one of them three arguments and another two) that it is an arbitrary or capricious exercise of power amounting to a denial of fundamental rights of the parties, for such judges to make up their minds without reading disputed portions of the record which constituted the main substance and subject of the argument. It is not given to federal courts to so control the mental processes and manner of action of state judges.

The bill suggests and counsel argue that the state law requires the concurrence of five judges of the state Supreme Court; that the failure of four of the five judges herein to read the record made it legally impossible to join in a judgment and, therefore, this judgment was not by five judges. This is answered by the allegations of the bill that the four judges did, as a matter of fact, concur.

We have painstakingly read and reread this entire record and all of the briefs filed herein; have examined all authorities cited by any counsel and have extended our investigation much beyond. We can find no basis in adjudicated authority or announced principles for this action. The trial court was right in dismissing this bill and the decree entered thereon is affirmed.